# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

Nº 1:06-CV-226-SAA

| | |
|---|---|
| JOAN M. HARRISON,<br><br>    *Plaintiff*,<br>VERSUS<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    *Defendants.* | **MEMORANDUM OPINION**<br>REVERSING<br>THE COMMISSIONER'S DECISION<br>&<br>REMANDING<br>FOR PROCEEDINGS CONSISTENT WITH THIS OPINION |

\* \* \* \* \*

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the Social Security Commissioner's decision denying plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income benefits under §§ 216(I), 223, and 1614(a)(3)(A), respectively, of the Social Security Act. This court has jurisdiction under 28 U.S.C. § 1331, and is prepared to rule. For the proceeding reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion.

### I.

### A.

The plaintiff, Joan M. Harrison, was born on January 23, 1955. She completed high school. Her past relevant work was as a dining room supervisor, fast food assistant manager, and a cosmetologist. At the time of the second hearing, from which

this current appeal comes, the plaintiff was 55 years old, which is considered an "advanced age" under the Social Security Act. *See* 20 C.F.R. §§ 404.1563, 416.963.

She filed her present applications for disability insurance benefits and supplemental social security income on November 9, 2000. She alleges that she became disabled on July 28, 2000 due to osteoporosis, osteoarthritis, bulging discs, degenerative discs, fibromyalgia, high hernia, and problems with her immune system. The Commissioner denied her application both initially and on reconsideration. Following a hearing, the Administrative Law Judge (ALJ) issued an unfavorable decision on October 7, 2002, from which the plaintiff appealed to the Appeals Council. The Appeals Council remanded the case to the ALJ with instructions. Subsequently, the same ALJ issued a new decision on November 23, 2005, which was again unfavorable to the plaintiff. The Appeals Council declined to review this second opinion, which therefore became the final decision of the Commissioner and is now ripe for review.

**B.**

In determining disability, the Commissioner, through the ALJ, uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. The burden of proving disability rests with the plaintiff throughout the first four steps. If the plaintiff successfully carries her burden on steps one through four, the burden relating to step five shifts to the Commissioner. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The five-step process is as follows:

(1)  The plaintiff must prove that she is not currently engaged in substantial,

2

gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).

(2) The plaintiff must prove that her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ." *Id.* §§ 404.1520(c), 416.920(c).

(3) Provided that the plaintiff proves that her impairment meets or is medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02, the ALJ must conclude that the plaintiff is in fact disabled. *Id.* §§ 404.1520(d), 416.920(d).

(4) The plaintiff must prove that she is incapable of meeting the physical and mental demands of her past relevant work. *Id.* §§ 404.1520(e), 416.920(e).

Assuming the plaintiff successfully bore her burden for factors one through four, then:

(5) The Commissioner must prove that, considering plaintiff's residual functional capacity, age, education, and past work experience, she is capable of performing other work. *Id.* §§ 404.1520(f)(1), 416.920 (f)(1).

If the Commissioner proves that other work exists that the plaintiff can perform, the plaintiff then may prove that she cannot in fact perform that work. *Muse*, 925 F.2d at 789.

## II.

The plaintiff identified four reasons why the Commissioner's decision is legally defective:

(A) The ALJ failed to develop the record fully, thereby not complying with the Appeal Council's remand order, as he should have under 20 C.F.R.

404.1512(e);

(B) The ALJ disregarded the opinion of a treating specialist and failed to explain why he disregarded that opinion;

(C) The ALJ failed to evaluate the plaintiff's subjective pain complaints properly since he did not weigh them against objective findings; and,

(D) The ALJ's decision was not supported by substantial evidence, as required under 42 U.S.C. § 405(g).

The court will consider these arguments *seriatim*.

### A.

In this circuit, an ALJ has a responsibility to develop a claimant's record fairly and fully. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). An ALJ's failure to develop the record does not *per se* justify reversal. *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). Rather, the plaintiff must demonstrate that the ALJ's failure prejudiced her by showing that she could, and would, have presented evidence that might have altered the result. *Kane*, 731 F.2d at 1220. The court will consider the plaintiff's point of error under this standard of analysis.

### 1.

20 C.F.R. § 1512(d) describes the Commissioner's responsibilities concerning the evidence developed for a determination of disability. That section states:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you

filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

20 C.F.R. § 1512(d). Further, that regulation describes the process for obtaining additional, necessary medical evidence. Without quoting, it suffices to say that the regulation places the burden of collecting the additional medical evidence on the Commissioner. *See* 20 C.F.R. § 1512(e). Indeed, when unable to obtain the information, the Commissioner will pay for a consultative examination. *See* 20 C.F.R. § 1512(f). The necessity of a well-developed medical record is self-evident; after all, how else can the Commissioner determine whether a claimant is "disabled" and entitled to benefits?

After the ALJ's initial decision in this case, the Appeals Council issued an opinion vacating that initial decision and remanding the matter to the ALJ. In its order, the Appeals Council, in relevant part, directed the ALJ to:

> obtain additional evidence necessary to complete the administrative record and give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations . . . . In doing so, evaluate the treating source opinion [under applicable SSA regulations] and explain the weight given to such opinion evidence.
>
> . . .
>
> As appropriate, the Administrative Law Judge may request the ***treating source*** to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairments . . .

(R. 90) (emphasis added). With the legal standards and Appeals Council's directives in mind, the court will now consider whether the ALJ's second opinion complies with the

5

Appeals Council's order and is consistent with its responsibilities under Administration regulations.

**2.**

The ALJ failed to comply with the Appeals Council's remand order. In his second opinion, the ALJ states: "The undersigned pursuant to the remand . . . has considered *the letter of the claimant's attorney* dated July 2, 2003 . . ." (R. 39) (emphasis added). Later in the same paragraph, the ALJ writes, "The undersigned in an effort to comply with the remand requested the *claimant's attorney* by letter dated October 25, 2004 *to submit a copy of his January 6, 2004 letter*, but no such letter was submitted" (R. 39) (emphasis added). It seems evident that the ALJ felt additional evidence or further clarification was necessary for his determination. However, the ALJ requested that evidence from the claimant's attorney, not the ***treating source*** as the Appeals Council contemplated in its remand order. Although it is clear that the Appeals Council understood that the ALJ might invite counsel's assistance in obtaining additional medical information from treating or consultative sources, the clear intent of the reversal was that the ALJ obtain medical information, not further argument or other information from the plaintiff's lawyer. The treating source, learned in medicine, is in a much better position to provide that addition or clarification than is the claimant's attorney. Indeed, the Commissioner's regulations, as discussed above, reveal that Commissioner generally attempts to collect medical information from custodians of those records, rather than from the claimants. *See* 20 C.F.R. § 1512. Having felt it

6

appropriate to make those requests, the ALJ should have directed them to the treating source, consistent with the remand order and the spirit, if not letter, of Social Security Administration [SSA] regulations.

Next the court must consider whether the ALJ's noncompliance with the remand order prejudiced the plaintiff, for this court may not reverse solely for the ALJ's failure to develop the record fully. *See Kane*, 731 F.2d at 1220. The court concludes that the ALJ's failure does prejudice the plaintiff.

The ALJ considered the evidence from Dr. Milnor, a treating physician, concerning the plaintiff's various ailments, particularly her alleged fibromyalgia. *See* (R. 38-39), finding that Dr. Milnor diagnosed the plaintiff with fibromyalgia "by history. . . . He cited no fibromyalgia-related trigger points pursuant to his physical examination and commented significantly to the contrary" (R. 38).One could, as the ALJ did, infer "reasonably from the foregoing that Dr. [Milnor] based his disabling limitations primarily upon the subjective allegations . . ." (R. 38). An inference here is not proper. The ALJ could, and should, have requested clarification from Dr. Milnor, leaving no need for an inference, reasonable or otherwise. This is precisely what the Appeals Council ordered in its remand order. Since neither the ALJ nor this court knows the basis for Dr. Milnor's decision, which was integral to the ALJ's decision, it is clear that the ALJ's failure to request an addition or clarification from the doctor does prejudice the plaintiff. The ALJ's decision may have been different had knowledge taken the place of supposition and inference.

Therefore, the court shall remand this case to the ALJ, who shall direct his

7

requests for additional evidence or a clarification to the treating source, rather than to the plaintiff's attorney. This course conforms to the Appeals Council's remand order and to SSA regulations. After having received the addition or clarification, the ALJ shall consider whether actual knowledge changes the ALJ's conclusions regarding the weight to be accorded the treating source.

**B.**

Plaintiff next contends that the ALJ "improperly disregarded the opinion of a treating specialist and failed to explain this action in compliance with 20 C.F.R. § 404.1527(d)" (Nº 10, at p. 9). According to Harrison, the ALJ afforded "limited weight" to the opinions of Drs. Gray and Mayers. The ALJ accorded Dr. Mayers little weight because he believed that the doctor's assessment was based on the plaintiff's subjective pain complaints. *See* (R. 38). As to Dr. Gray, the ALJ saw an inconsistency in the doctor's reports in 2000 and in 2002. *See* (R. 38). Plaintiff concludes: "The ALJ's explaining away of the medical source statements of those doctors most familiar with the Plaintiff's condition is a patent violation of Social Security Ruling No. 96-2p(6) . . ." (Nº 10, at p. 10).

Its own regulations provide that SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and lists factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(d)(2). "Treating source medical opinions are still entitled to deference and **must be weighed** using all of the factors provided in

8

20 C.F.R. § 404.1527 and 416.927." Social Security Ruling 96-2p (emphasis added) . Ruling 96-2p also provides that controlling weight may not be given unless "the opinion is well-supported by medically acceptable clinical diagnostics techniques" and "also '*not inconsistent*' with the other substantial evidence in the case record." SSR 96-2p, Purpose (3)-(4) (emphasis added).

In disposing of this point of error, the court must address: (1) whether Drs. Gray and Mayers are "treating source medical opinion"; if so, (2) whether their opinions are entitled to "controlling weight"; or, otherwise (3) whether the ALJ weighed the opinions consistent with the requirements of 20 C.F.R. §§ 404.1527, 416.927.

**1.**

SSA defines a "treating source" as, with the second-person singular voice referring to the claimant:

> . . . your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.
>
> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).
>
> We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).
>
> We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to

>obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. §§ 404.1502, 416.902. Despite the verbosity, the determinative factor is whether a claimant initially went to the doctor for treatment purposes and continues to go to the doctor sufficiently for treating the claimant's medical problems. Necessarily, the decision is a case-by-case matter depending heavily on the claimant's ailments.

### *Dr. Gray.*

- The plaintiff first saw Dr. Gray on August 4, 2000 (R. 307). At that time, she presented with back injuries she claimed resulted from an accident at her then-employer, Captain D's.

- She had a follow-up visit with Dr. Gray on August 9, 2000 (R. 304). At this appointment, Dr. Gray placed the plaintiff on medications and instituted a lifting restriction of ten pounds and postural limitations (R. 304).

- At her third visit, August 16, 2000, the plaintiff presented the same symptoms as before and told Dr. Gray that she had not attended physical therapy. She also complained of severe headaches.

- Her next visit was on January 31, 2001 (some five months), when Dr. Gray instituted the following restrictions: five-pound lift restriction and avoidance of prolonged or repetitious sitting, standing, stooping, etc.

- She had another appointment on February 20, 2001, where Dr. Gray

removed all restrictions. The plaintiff also indicated that her pain improved and that she wished to continue treatment with Dr. Gray on a non-industrial basis.

All told, the record reveals that the plaintiff visited Dr. Gray on five occasions, starting five days after she fell at work. She returned around every two weeks to Dr. Gray and indicated, once the industrial need for treatment ended, that she wished to continue treatment with the doctor. Although the relationship was initially industrial, the length and frequency of the visits indicate that an "ongoing treatment relationship" existed, and therefore the court finds that Dr. Gray is a treating source. *See* 20 C.F.R. §§ 404.1502, 416.902.

### *Dr. Mayers.*

At behest of the Mississippi Office of Disability Determination Services, Dr. Mayers ***consultatively*** examined the plaintiff on April 16, 2002. *See* (R. 318-21). Consultative examinations are generally considered non-treating sources because there is no ongoing treatment relationship. As Dr. Mayers saw the plaintiff only once, and then at the request of a state agency, the court finds that he is a non-treating source under the Administration's regulations.

### 2.

Having found that only Dr. Gray is a treating source under the regulations, the court will now consider whether Dr. Gray's opinions should have been accorded "controlling weight." As a treating source, Dr. Gray's opinions are entitled to "controlling weight" unless the opinion is neither well-supported by medically

acceptable clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2).

The ALJ did not err in according less than "controlling weight" to Dr. Gray's opinions. The record reveals that Dr. Gray's opinions, and attendant restrictions placed on the plaintiff, were inconsistent. For example, January 31, 2000, the doctor ordered a five-pound weight restriction and avoidance of prolonged or repetitious sitting, standing, and the like. Less than a month later, on February 20, 2000, Dr. Gray removed all of those restrictions. That fact alone is not remarkable. It becomes more so when one considers that the plaintiff's complaints continued, though she noted some improvement in the intervening time. It is reasonable to conclude that the progression from a litany of serious occupational restrictions to none at all is not a consistent opinion, absent an explanation for the progression. The record reveals none. Nor did the ALJ seek additional information from Dr. Gray to assist him in determining what information led Dr. Gray to the conclusions expressed on June 20, 2002, which Dr. Gray explicitly stated were based upon objective tests and findings. Simply dismissing these findings without obtaining any medical records that may indicate whether Dr. Gray had continued to see the plaintiff after the last treatment visit reflected in the record before the ALJ was error.

### 3.

Moreover, when an ALJ finds that a treating source is not entitled to "controlling weight," he must apply five, explicit factors plus any additional factors the claimant brings to his attention. *See* 20 C.F.R. § 404.1527(d)(2). Weighing those factors

on the record is mandatory in this circuit. *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) ("This court . . . holds that an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist."). To comply with this circuit's law then the ALJ must consider each of those factors as they apply to Dr. Gray, but not to Dr. Mayers.[1]

The ALJ's opinion lacks consideration of the § 404.1527(d)(2) factors. While Dr. Gray's opinion may not be entitled to "controlling weight," it is still entitled to deference, the amount of which is determined by considering the § 404.1527(d)(2). As the ALJ did not consider those factors, the court is unable to determine whether the ALJ complied with this circuit's law espoused in *Newton v. Apfel*.

Accordingly, on remand, the ALJ shall on the record and in his opinion apply each of the § 404.1527(d)(2) factors to Dr. Gray's assessments.

## C.

In her third point of error, the plaintiff contends that the ALJ failed to evaluate her subjective pain complaints by weighing them against objective findings. The argument goes that people react to pain differently; and, reactions are not necessarily indicative of the true measure of pain the plaintiff is feeling.

---

[1] It is worth noting, however, that the ALJ, in finding that Dr. Mayers "expressly based his . . . restrictions [in his Medical Source Statement] upon the claimant's subjective reports to him," blatantly ignored not only Dr. Mayers's explicit statement in his Medical Source Statement that his findings were based "Upon both subjective and objective" findings ( R. 324, emphasis the court's), but also his explicit objective findings based upon his physical examination of plaintiff which he recorded in the text of his report ( R. 320-21). Thus, the ALJ's discounting of Dr. Mayers's opinions on the grounds offered was simply not founded upon the clear evidence of record.

In this circuit, pain alone can be disabling when linked to a medically determinable impairment. *See Cook v. Taylor*, 750 F.2d 391, 395 (5th Cir. 1985). As such, an ALJ may not wholly discount a claimant's subjective pain complaints summarily. Rather, as with the other medical information, the ALJ must weigh the evidence and assign articulable reasons for his findings of fact and conclusions of law. *Cook*, 750 F.2d at 395-96. The plaintiff argues that the ALJ made this error. The court disagrees.

On the whole, the ALJ's opinion considers the claimant's subjective pain complaints and weighed them against the objective evidence. For example, the ALJ found that "the claimant's subjective complaints and hearing testimony lack[ed] . . . credibility" (R. 38). Thereafter, the ALJ considers those complaints in reference to the objective medical evidence. *See* (R. 38-39). For questions of credibility, as with all factual determinations, this court's task is not to re-weigh evidence or substitute its judgment for that of the Commissioner. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). Rather, the court's task is to remedy clear deficiency in applications of law and to ensure that the Commissioner's decision generally is supported by substantial evidence.

Accordingly, this point of error has no merit.

**D.**

Finally, the plaintiff argues that the Commissioner's decision is not supported by substantial evidence as 42 U.S.C. 405(g) requires. The court reserves its analysis of this point of error, as it contains no independent legal error necessitating correction

at this time. It is more appropriate to postpone consideration here until after the ALJ has had an opportunity to comply with the sections of this opinion relating to ambiguity in the medical opinions and to an explicit analysis of Dr. Gray's opinions under the 20 C.F.R. § 404.1527(d)(2) factors.

Once the record is supplemented the court will, if necessary, analyze the Commissioner's decision for compliance with 42 U.S.C. 405(g).

### III.

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Administrative Law Judge for proceedings consistent with this opinion. An order will issue conforming to this memorandum opinion.

**SO ORDERED**, this the 24th day of September, 2007.

>  /S/ *S. Allan Alexander*
> UNITED STATES MAGISTRATE JUDGE